## MONTAGU v. WATSON.
### Civ. No. 129.

District Court. D. M. S. D.
July 15, 1943.

Nathan Fink, of Boston, Mass., and Albert Knudsen, of Portland, Me., for plaintiff.

Alan L. Bird, of Rockland, Me., and Leon V. Walker, of Portland, Me., for defendant.

PETERS, District Judge.

After some amendments, this is now a proceeding to compel specific performance of an alleged contract for the sale of real estate. The only question presented is whether a conveyance shall be ordered. The facts are as follows, as I find them: The plaintiff, a British subject, son of the late Duke of Manchester and the grandson on his mother's side of the late Eugene Zimmerman, of Cincinnati, Ohio, is a beneficiary under the will of Mr. Zimmerman who left his property in trust, the whole income to go to his daughter, mother of the plaintiff, now the Countess of Kintore, for life, with a contingent interest in the plaintiff in the remainder, but with no interest in income which he can alienate and no right to the principal in himself, or his heirs or assigns, unless and until he survives his mother twenty-one years. The estate now in the hands of trustees amounts to over a million dollars. There are other devisees who have possible interests in it beside the plaintiff.

The defendant, a citizen residing in Connecticut, president of a large American business corporation, in 1942 owned a summer residence in Camden, Maine, and a yacht, both of which he was willing to sell—the yacht for $25,000, and the real estate, consisting of dwellings and lands connected therewith, for $20,000.

Through a broker and a friend named Kelley, the plaintiff first became interested in the yacht, which he apparently would have purchased if he could have used his interest in the Zimmerman estate instead of money and if he could have obtained the necessary governmental consent to the sale of this American vessel to an alien.

The negotiations which the plaintiff claims resulted in a contract, "partly written and partly oral" covering both the boat and the real estate, began with an interview in New York, in March, 1942, between Mr. Kelley and a Mr. Hartley, a business associate representing the defendant, Mr. Watson. At this interview Kelley produced a copy of one of the accounts of the trustees under the Zimmerman will, and stated that the plaintiff, Lord Montagu, did not have any money to pay for the property and inquired whether an assignment of his interest under the Zimmerman will would be acceptable, Mr. Hartley being given to understand that Lord Montagu would come into possession of a large sum of money at the death of his mother. Mr. Watson did not require cash, and as a result of his attitude Lord Montagu with Kelley and Hartley went to Camden to examine the boat, and employes of Mr. Watson started to get more information about the trust and also a copy of the will—it not having been received up to that time.

A Mr. Schwartz, a lawyer in Cincinnati to whom Mr. Watson had been referred by Lord Montagu, gave some rather vague information about the alienability in general of trust estates in Ohio, but from a trust company in Cincinnati, representing the trustees under the will, it was learned that this trust estate could not be settled until twenty-one years after the death of the Countess of Kintore, who was stated by the trustee to be then living and in excellent health; and it was not until a letter was received from Schwartz dated April 27, 1942, that a copy of the Zimmerman will was made available to Mr. Watson or his representatives and the exact nature of this plaintiff's interest was disclosed.

After the return of the party from Camden, but before a copy of the will had been made available, the parties had enlarged the scope of their negotiations to include the real estate, and an assignment of $45,000 against his interest in the Zimmerman trust had been drawn up, executed by Lord Montagu and delivered to Mr. Hartley to hold in escrow pending the result of the investigation in Cincinnati. Nothing was signed by Mr. Watson then or afterward. A previous assignment of $25,000 to cover the yacht had been made and delivered in the same way. The later assignment of $45,000 was to cover both the real estate and the yacht. Both assignments were simple assignments of an interest in the Zimmerman estate and neither mentioned any sale or contemplated sale of any property.

■■ After the terms of the will were known, the negotiations took a new turn. Mr. Watson expressed his willingness to wait twenty-one years or more for his money, provided he could be sure of its eventual payment with simple interest at the rate of 3%. Lord Montagu undertook to fulfill that requirement by obtaining what he referred to as a "letter" from his mother and undertook to telephone her in Scotland, without result so far as appears. It was suggested by Mr. Hartley to Mr. Schwartz, who was handling the matter for the plaintiff in Cincinnati, that the Countess of Kintore should agree to make a will and the other remaindermen under the Zimmerman will should make necessary agreements to cover the contingency of Lord Montagu's dying within twenty-one years after the death of his mother.

In response, Mr. Schwartz submitted, in behalf of the plaintiff, a proposed agreement to be signed by the Countess of Kintore to the effect that if she should leave a will it would contain a provision that from the Zimmerman estate Mr. Watson should be reimbursed for any loans he had made to Lord Montagu "not exceeding the amount the said Lord Edward E. F. Montagu would have received had he survived me (her) for the period twenty-one years after my (her) death". This, naturally, was not acceptable to Mr. Watson. The proposed sales fell through. No further effort appears to have been made to meet the not unreasonable desire and request of Mr. Watson that he should be assured of the payment for his property, at least sometime in the distant future. The attorney for the plaintiff apparently then took the view that a contract had been made and wrote Mr. Hartley that it was "common knowledge" around Camden that Mr. Watson had sold his boat and house to Lord Montagu. That was also the general nature of the proof offered in support of the alleged contract, but it is obvious that no such contract was ever completed and certainly nothing signed by Mr. Watson to meet the requirement of the statute of frauds. Even if any verbal agreement had been completed for the sale of the real estate, it would have been void in New York, where made, under the statute of that state, and unenforceable in Maine under the Maine Statute.

■ Some attempt has been made to avoid the effect of the statute of frauds by showing that the plaintiff went into possession of the real estate at Camden under circumstances making it inequitable to be deprived of a conveyance. He was simply permitted to stay there as a guest on one of his visits to Camden and did nothing which would have the slightest effect to avoid the operation of the statute of frauds. He acquired no right in the property, either legal or equitable.

When suit was brought—as it was originally in the state court—for damages for failure to carry out the alleged contract of sale of the boat, it was transferred to this court, where later, by amendment, the matter of the sale of the boat was abandoned and the plaintiff rested his case on an alleged contract to purchase the house and land at Camden, asking for specific performance. It is clear that he is not en-

608

titled to it under any aspect of the evidence, nor was any evidence of damages submitted.

Judgment will be entered for defendant with costs.